IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STIM, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 15-0772-CV-W-ODS ) |
| AECOM TECHNICAL SERVICES, INC., | ) ) |
| Defendant. | ) |

<u>ORDER AND OPINION (1) GRANTING DEFENDANT'S MOTION TO DISMISS PARTY AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

Pending is Defendant Aecom Technical Services, Inc.'s ("Defendant") Motion to Dismiss Party and Motion to Dismiss for Failure to State a Claim. Doc. #14, Doc. #15.

## I. BACKGROUND

On March 31, 2014, Defendant and Plaintiff STIM, LLC ("Plaintiff") entered into a Consulting Agreement. Under this Consulting Agreement, Plaintiff was supposed to identify tax incentives for Defendant. Defendant, in turn, would compensate Plaintiff for these services. For several months, Plaintiff worked to identify tax incentives for Defendant. In September 2014, Defendant terminated the Consulting Agreement. Based on these allegations, Plaintiff asserts claims for Breach of Contract (Count I), Quantum Meruit (Count II), Unjust Enrichment (Count III), Declaratory Judgment (Count IV), Fraudulent Misrepresentation (Count V), Violation of the Missouri Trade Secrets Act (Count VI), and Violation of California Unfair Competition Law (Count VII). Defendant moves to dismiss Counts IV through VII.

## II. LEGAL STANDARD

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P.

8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 1950.

### III. DISCUSSION

#### A. Motion to Dismiss Party

Plaintiff names as the defendant in this action "AECOM, Inc. a/k/a AECOM Technical Services, Inc." Doc. #1. However, Defendant notes that AECOM, Inc. and AECOM Technical Services, Inc. are two separate entities and that AECOM, Inc. is a wholly owned subsidiary of AECOM Technical Services, Inc. Further, Defendant asserts that AECOM, Inc. does not have any "involvement with the facts underlying this suit, and that AECOM Technical Services, Inc. was the entity which entered into the Consulting Agreement that is at issue in this action." The Court's review of the subject

2

Consulting Agreement confirms Defendant's assertion. Defendant asks this Court to dismiss AECOM, Inc. from the lawsuit. Plaintiff does not appear to dispute that if AECOM, Inc. were improperly joined, then AECOM, Inc. should be dismissed. Doc. #30, page 3. Accordingly, the Court dismisses AECOM, Inc., and AECOM Technical Services, Inc. remains the defendant in this action. Fed. R. Civ. P. 21.

### B. Declaratory Judgment (Count IV)

Defendant asserts Plaintiff's Count IV seeking a declaratory judgment should be dismissed because Plaintiff has an adequate remedy at law, namely Count I which is a breach of contract claim. Plaintiff responds that Federal Rule of Civil Procedure 57 provides that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." While another adequate remedy may not preclude a declaratory judgment, a declaratory judgment is a remedy, not a cause of action. *Jackson County, Mo. Ex rel. Nixon v. MERSCORP, Inc.*, 915 F. Supp. 2d 1064, 1072 (W.D. Mo. 2013). Plaintiff does not assert a cause of action in Count IV. Plaintiff is free to seek whatever type of relief it chooses in its substantive counts, but Plaintiff cannot transform a request for declaratory relief into an independent cause of action. Accordingly, Plaintiff's Count IV is dismissed.

### C. Fraudulent Misrepresentation (Count V)

Under Missouri common law, the elements of fraudulent misrepresentation are:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to reply thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc. 2010).

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud . . . shall be stated with particularity." The Eighth Circuit has held that the requirements of Rule 9(b) must be interpreted

3

> in harmony with the principles of notice pleading . . . . The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct. Thus, a plaintiff must specifically allege the circumstances constituting fraud, . . . including such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.

*Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (quotations and citations omitted). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011).

Defendant maintains it cannot determine what statements Plaintiff alleges are fraudulent. Paragraph 82 of the Complaint asserts that the statements described in paragraphs 8-11 and 13-14 of the Complaint are fraudulent misrepresentations. The Court's review of these enumerated paragraphs indicates that they contain statements that cannot be considered fraudulent misrepresentations Defendant made. For example, paragraph 13(h) describes statements *Plaintiff* made to Defendant. However, in its Opposition to Defendant's Motion to Dismiss, Plaintiff identifies specific statements within paragraphs 8-11 and 13-14 of the Complaint which Plaintiff claims are fraudulent misrepresentations.[1] Accordingly, the Court will construe Plaintiff's Complaint as asserting those specific statements to be fraudulent misrepresentations. These statements include Michael Feigin ("Feigin"), Defendant's employee, stating that he and Defendant's staff "vetted" the consulting services Plaintiff would provide; Feigin telling Plaintiff that Defendant had not previously utilized the type of services Plaintiff offered; and Feigin telling Plaintiff that Defendant was anxious for Plaintiff to get started. Doc. #1, ¶ 9. The statements also include Ian McLeod ("McLeod"), Defendant's employee,

---

[1] Plaintiff also identifies specific statements not within paragraphs 8-11 and 13-14 that it maintains are fraudulent misrepresentations. But paragraph 82 of Plaintiff's Complaint expressly limits the paragraphs in which the alleged fraudulent misrepresentations can be found. If the Court were to permit Plaintiff to allege statements outside of paragraphs 8-11 and 13-14 were fraudulent misrepresentations, then paragraph 82's express limitation would be rendered meaningless. Moreover, if the Court were to permit Plaintiff to expand the scope of the alleged fraudulent misrepresentations in this way, then any statement in the Complaint could be a potential fraudulent misrepresentation – and that would not satisfy the particularity requirement of Rule 9(b).

4

instructing Plaintiff to begin identifying tax incentives; McLeod informing Plaintiff that he would identify upcoming hiring projects for Plaintiff's tax incentive work; and McLeod informing various employees of Defendant that Plaintiff had been hired to pursue tax incentives and asking those various employees to meet with Plaintiff.  Doc. #1, ¶ 13.

Plaintiff maintains that Feigin's and McLeod's statements are fraudulent misrepresentations because at the time they made the statements (1) Defendant knew it was going to purchase two large companies and these purchases would be so complex and time-consuming that Defendant would not perform under the Consulting Agreement; (2) Defendant's policy is to repudiate contracts entered into by employees who leave Defendant's employ and when Feigin executed the Consulting Agreement, Defendant knew Feigin was about to leave its employ; and/or (3) Defendant's policy is to repudiate contracts when it determines that the other party to the contract is entitled to "excessive compensation."  Doc. #1, ¶ 83.

Plaintiff's third theory does not support a claim for fraudulent misrepresentation, as this theory merely describes a breach of contract.  Thus, the Court will not consider Feigin's and McLeod's statements to be fraudulent under this theory.

Defendant argues that the first two theories also do not support a claim for fraudulent misrepresentation because Plaintiff conflates individual liability and corporate liability for fraudulent misrepresentation.   The Court is not persuaded.

Defendant cites three cases to support its position.  In *Wivell v. Wells Fargo Bank, N.A.*, the Eighth Circuit affirmed the District Court's dismissal of the plaintiffs' fraudulent misrepresentation claim because they did not identify the specific employees of Wells Fargo Bank who allegedly made the false statements. 773 F.3d 887, 898 (8th Cir. 2014).  The Court did not, however, make any distinction between a corporation's employee's liability and the corporation's liability.  Here, Plaintiff has identified the specific employees of Defendant who allegedly made false statements.

In *Topchian v. JPMorgan Chase Bank, N.A.*, the Eighth Circuit held that the plaintiff had not stated a claim for fraudulent misrepresentation because the plaintiff had not alleged that JPMorgan Chase's employee "knew that his representation was false or that he was reckless as to whether it was true or false."  760 F.3d 843, 853 (8th Cir.

5

2014).  Again, however, the Court did not make a distinction between a corporation's employee's liability and the corporation's liability.

Finally, in *In re K-Tel International, Inc. Securities Litigation*, the Eighth Circuit determined that scienter could not be proven by "unsupported allegations with regard to motives generally possessed by all corporate directors and officers…" 300 F.3d 881, 894 (8th Cir. 2002).  First, this determination was not made in the context of a common law fraudulent misrepresentation claim.  Second, a corporation acts through its employees.  According to Plaintiff's allegations, Defendant – through its employees – told Plaintiff it intended to perform under a contract, when Defendant had no intent to perform under that contract.

Under Missouri law, an unkept promise constitutes fraudulent misrepresentation when "it is accompanied by a present intent not to perform." *Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 259 (Mo. 2006).  Accordingly, what the Court understands Plaintiff's theory to be and the claim which survives Defendant's Motion to Dismiss is the following:  Plaintiff entered the Consulting Agreement and performed under the Consulting Agreement, because Plaintiff believed – due to Defendant's employees' statements – Defendant also would perform under the Consulting Agreement.  Plaintiff alleges, though, that at the time Defendant made these statements, Defendant had no intention of performing under the Consulting Agreement either because Defendant knew it was purchasing two large companies and would not spend time and energy on the projects associated with the Consulting Agreement and/or Defendant knew Feigin was leaving soon and thus Defendant would not honor the Consulting Agreement which Feigin executed.[2]

### D.  Missouri Uniform Trade Secret Act (Count VI)

To establish a claim for misappropriation under the Missouri Uniform Trade Secret Act, Plaintiff must demonstrate, "(1) a trade secret exists, (2) the defendant misappropriated the trade secret, and (3) the plaintiff is entitled to either damages or

---

[2] In its Reply Suggestions, Defendant argues for the first time that Plaintiff's claim for fraudulent misrepresentation is barred by the economic loss doctrine.  Defendant may maintain that this argument was in response to Plaintiff's opposition, but the Court finds Defendant could have made this argument in its opening brief.  Thus, because Defendant did not raise it until its Reply Suggestions, the Court will not consider it.

6

injunctive relief." *Central Trust and Inv. Co. v. Signalpoint Asset Management, LLC*, 422 S.W.3d 312, 320 (Mo. 2014). A "trade secret" is information or data that: "(a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonably under the circumstances to maintain its secrecy." Mo. Rev. Stat. § 417.453. Misappropriation of a trade secret occurs either "when one acquires a trade secret through 'improper means,' that is, through such means as theft, bribery or inducing one to breach a duty of secrecy…or when one disclosing a trade secret without consent…knew or had reason to know that the secret was 'acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use.'" *BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 683 (8th Cir. 2002) (citing *H & R Block E. Tax Servs., Inc. v. Enchura*, 122 F. Supp. 2d 1067, 1074 (W.D. Mo. 2000)). Defendant argues Plaintiff's trade secret claim fails for two reasons: (1) Plaintiff has not specifically identified any trade secrets, and (2) misappropriation did not occur.

In its Complaint, Plaintiff asserts that its "processes, procedures, methods, methodologies, associations, contacts, knowledge and/or information regarding business, economics and/or employment economic incentives available from governmental entities" are trade secrets. Doc. #1, ¶ 90. This assertion is the very definition of conclusory. Plaintiff cites *Secure Energy, Inc. v. Coal Synthetics, LLC* in support of its position that the conclusory assertion is sufficient. 708 F. Supp. 2d 923 (E.D. Mo. 2010). As a preliminary matter, *Secure Energy* is not binding authority on this Court. Further, the parties in *Secure Energy* were competitors in the same industry; the same cannot be said in this case. Finally, it appears that in large part, the plaintiffs in *Secure Energy* had actually specified what the alleged trade secrets were. *Id*. at 929-30. Again, the same cannot be said here.

Next, Plaintiff points the Court to several paragraphs in its Complaint that Plaintiff maintains identify the alleged trade secrets. These paragraphs describe items such as an executive summary of incentives available in various states, action plans on how Defendant could pursue and obtain tax incentives, a spreadsheet to capture hiring and training data from Defendant, and a chart prioritizing various available tax incentives.

7

Doc. #1, ¶¶ 12-13, 17-20, 22, 25, 33-34, 36, 39. Even after reviewing the cited portions of the Complaint, the Court is still left wondering what the alleged trade secrets are. To the extent Plaintiff asserts Defendant's confidential information is a trade secret, that information is, at best, *Defendant's* trade secret. To the extent Plaintiff claims information about tax incentives is a trade secret, the Court finds that this information is publically available, and thus, not a trade secret. *Sigma-Aldrich Corp. v. Vikin*, 451 S.W. 3d 767, 774 (Mo. Ct. App. 2014). To the extent Plaintiff claims its unique compilation of publically available information is a trade secret, the Court is unpersuaded for two reasons. First, Plaintiff has not identified what its unique compilation rubric is. Second, Defendant argues, and the Court agrees, Plaintiff's advice to Defendant is similar to the legal advice an attorney gives a client. While legal advice and Plaintiff's advice to Defendant may be confidential, neither type of advice is a trade secret. Accordingly, the Court dismisses Count VI.[3]

### E. Unfair Competition Claim (Count VII)

California's Unfair Competition Law ("UCL") prohibits "three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent." *Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1473-74 (Cal. Ct. App. 2014); *see also Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 609 (Cal. Ct. App. 2014). A claim made under this statute "is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct…Thus, California courts have consistently interpreted the language [of the statute] broadly." *Cansino*, 224 Cal. App. 4 th at 1473-74 (internal quotations and citations omitted).

### 1. Unlawful Prong & Fraudulent Prong

Plaintiff claims Defendant violated sections 1770(a)(5), (7), and (9) of the California Civil Code, but Defendant argues, and the Court agrees, that this statute relates to advertising, which is not at issue in this case. A plain reading of section 1770(a) demonstrates it is not implicated by the allegations in Plaintiff's Complaint.

---

[3] Because the Court finds Plaintiff has not sufficiently identified the alleged trade secrets, the Court need not address whether misappropriation occurred.

8

Next, Plaintiff asserts Defendant violated sections 1572, 1709, and 1710 of the California Civil Code. These sections establish claims for fraud and deceit. Defendant asserts Plaintiff has not provided any factual support for these claims and because Plaintiff's claim for fraudulent misrepresentation fails, these claims fail. First, it does not require much of an inference to determine the factual allegations underlying Plaintiff's fraudulent misrepresentation are likely the same factual allegations underlying Plaintiff's claim for fraud and deceit pursuant to sections 1572, 1709, and 1710; thus, the Court construes the Complaint accordingly. Second, the Court has determined that Plaintiff's claim for fraudulent misrepresentation does *not* fail, and for these same reasons, determines that Plaintiff's claim for unlawful conduct under sections 1572, 1709, and 1710 also do not fail.

Defendant makes similar arguments with respect to Plaintiff's claim under the fraudulent prong of the UCL. Again, the Court construes Plaintiff's claim for fraud under the UCL to be based on the same allegations upon which Plaintiff's fraudulent misrepresentation claim is premised. Because Plaintiff's claim for fraudulent misrepresentation does not fail at this juncture, Plaintiff's claim under the fraudulent prong of the UCL also does not fail.

### 2. Unfair Prong

It appears that California law is unsettled as to what constitutes an unfair business practice under the UCL. Some courts in California have determined they must "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim…," and an unfair business practice is one which "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *In re Insurance Installment Fees*, 211 Cal. App. 4th 1395, 1418 (Cal. Ct. App. 2012) (internal quotations and citations omitted). Other California courts evaluate the following factors: "(1) if the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.* Finally, some California courts find that "when a claim of an unfair act or practice is predicated on public policy,…the public policy which

is a predicate to the action must be tethered to specific constitutional, statutory, or regulatory provisions." *Id*.

Defendant argues Plaintiff has not provided any factual support for a claim under the unfair prong of the UCL. The Court expresses some misgivings about this claim – in that, the Court is not certain what additional relief Plaintiff would receive if it were successful on this claim and if Plaintiff were successful with its breach of contract and fraudulent misrepresentation claims. Nonetheless, Plaintiff is permitted to plead in the alternative, and Defendant's argument seems to presuppose that Plaintiff's fraudulent misrepresentation claim would fail. Thus, the Court construes this claim to be premised on the same factual allegations upon which Plaintiff's fraudulent misrepresentation is premised.

### 3. Standing

Defendant contends Plaintiff has failed to establish it has standing to bring a claim under the UCL. To have standing under this statute, Plaintiff must demonstrate "a causal link between the alleged UCL violations and an injury in fact resulting in loss of money or property." *Graham*, 226 Cal. App. 4th at 614. While the Court does not find Plaintiff's pleading to be exemplary on this point, the Court also does not find it is much of a leap to determine from the Complaint that Plaintiff has asserted it has lost money due to Defendant's alleged unfair, unlawful, or fraudulent actions. Accordingly, the Court will not dismiss Count VII on this basis.

Finally, in its Reply Suggestions, Defendant argues for the first time that Plaintiff does not have standing to assert a claim under the UCL because Plaintiff is neither a competitor nor a consumer and the public in general is not implicated. This argument may or may not be true, but because Defendant did not raise it until its Reply Suggestions, the Court will not consider it.

### IV.  CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss Party. Doc. #14. Additionally, the Court grants in part and denies in part Defendant's Motion to Dismiss. Doc. #15. Specifically, the Court dismisses Plaintiff's claims for Declaratory

10

Judgment (Count IV) and Violation of the Missouri Uniform Trade Secrets Act (Count VI), but Plaintiff's claims for Fraudulent Misrepresentation (Count V) and Violation of California Unfair Competition Law (Count VII) remain.

IT IS SO ORDERED.

DATE: April 1, 2016

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

<sub>
</sub>