IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STIM, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 15-0772-CV-W-ODS |
| AECOM, INC., | ) |
| Defendant. | ) |

### ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending are cross motions for summary judgment. Plaintiff STIM, LLC's Motion for Partial Summary Judgment (Doc. #125) is denied, and Defendant AECOM, Inc.'s Motion for Summary Judgment (Doc. #122) is granted in part and denied in part.

## I.     BACKGROUND

On March 31, 2014, Plaintiff[1] and Defendant entered into a Consulting Agreement. Under the Consulting Agreement, Plaintiff was supposed to identify tax incentives for Defendant. Defendant, in turn, would compensate Plaintiff for those services. For several months, Plaintiff worked to identify tax incentives for Defendant. In September 2014, Defendant terminated the Consulting Agreement.

Plaintiff subsequently filed suit against Defendant. On April 1, 2016, the Court granted in part and denied in part Defendant's Motion to Dismiss. Doc. #66. Specifically, the Court dismissed Plaintiff's claims for Declaratory Judgment (Count IV), and violation of the Missouri Uniform Trade Secrets Act (Count VI). Plaintiff and Defendant have now filed cross motions for summary judgment. Plaintiff seeks summary judgment on his claim of Breach of Contract (Count I). Doc. #125. Defendant seeks summary judgment on all of Plaintiff's remaining claims: (1) Breach of Contract

---

[1] Robert Mandel is the lone member of STIM, a limited liability company.

(Count I), (2) Quantum Meruit (Count II), (3) Unjust Enrichment (Count III), Fraudulent Misrepresentation (Count V), and violation of California Unfair Competition Law (Count VII).  Doc. #122.

## II.     LEGAL STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986).  "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted).  In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984).  However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the…pleadings, but…by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

## III.     DISCUSSION

### A.  COUNT I

Plaintiff presents a claim for breach of contract in Count I.  Doc. #1, at 30.  The Court finds genuine issues of material fact exist as to this claim.  Therefore, the Court denies Plaintiff's motion for partial summary judgment.  The Court also denies Defendant's motion for summary judgment as to this claim for the same reason.

2

### B. COUNTS II AND III

Plaintiff presents claims for quantum meruit in Count II, and unjust enrichment in Count III. Doc. #1, at 32. Defendant maintains these claims are precluded by the express contract at issue in this case. Doc. #123, at 38-39. Plaintiff indicates the Court may regard these claims as foreclosed by the existence of an express contract at issue. Doc. #140, at 19. The existence of an express contract precludes recovery under equitable theories such as quantum meruit and unjust enrichment. *E.g.*, *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014) (citations omitted); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014) (citation omitted) (applying Missouri law). Accordingly, the Court grants summary judgment in favor of Defendant on Count II and Count III.

### C. COUNT V

Plaintiff presents a claim for fraudulent misrepresentation in Count V. Doc. #1, at 33. To prevail on a fraudulent misrepresentation claim under Missouri law, a plaintiff must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 880 (Mo. banc 2015).

In its April 1, 2014 Order, the Court addressed the specific statements on which Plaintiff could rely to claim fraudulent misrepresentation. Doc. #66, at 4-5. Specifically, the Court limited Plaintiff's fraudulent misrepresentation claim to statements in paragraphs 8-11 and 13-14 of the Complaint. *Id.* The Court further found some statements in the enumerated paragraphs could not support a claim of fraud, and limited the statements upon which Plaintiff could rely to statements by Defendant employees Michael Feigin, Ian MacLeod, and Brian Rand. *Id.* Defendant argues

Plaintiff cannot show the falsity of each allegedly fraudulent statement made by Defendant's employees. Doc. #123, at 40.

Plaintiff claims Feigin's statements that Defendant's staff "vetted" the consulting services Plaintiff would provide, Defendant had not previously utilized the type of services Plaintiff offered, and Defendant was anxious for Plaintiff to get started were fraudulent misrepresentations. Doc. #1, ¶ 9. Feigin does not recall making these statements, but testified the statements would have been true when he made them if he did so. Doc. #123-2, at 165-66; Doc. #141, at 13. Plaintiff testified he understood these statements were true when Feigin made them. Doc. #123-2, at 51; Doc. #141, at 14. Plaintiff cannot demonstrate as a matter of law Feigin's statements were false when made.

Plaintiff claims MacLeod statements in which he instructed Plaintiff to begin identifying tax incentives, would identify upcoming hiring projects for Plaintiff's tax incentive work, and informed various employees of Defendant that Plaintiff had been hired to pursue tax incentives and asked them to meet with Plaintiff were fraudulent misrepresentations. Doc. #1, ¶ 13. Plaintiff knew Defendant intended to move forward with pursuing incentives under the Consulting Agreement. Doc. #123-2, at 73; Doc. #141, at 14. The record shows MacLeod provided information to Plaintiff. Doc. #123-2, at 72, 78-79; Doc. #141, at 18. Finally, the parties quibble over who drafted or edited the emails circulated by MacLeod, but Plaintiff's Complaint, and the record does not show otherwise, indicates MacLeod reached out to various employees of Defendant to have them meet with Plaintiff. Doc. #1, ¶ 13; Doc. #123-2, at 391, 393; Doc. #123-3, at 2, 4-5; Doc. #141, at 18-19. Plaintiff cannot demonstrate as a matter of law MacLeod's statements were false when made.

Plaintiff claims statements by Rand that he wanted to stay in contact with Plaintiff throughout the duration of the Consulting Agreement, and would provide assistance to Plaintiff were fraudulent misrepresentations. Doc. #1, ¶ 13. The parties again quibble over whether Rand "spoke" to Plaintiff, but it is clear Rand was a key contact for Plaintiff, the two communicated throughout the Consulting Agreement, and Plaintiff characterized Rand as "pretty honest throughout the whole procedure." Doc. #123-2, at

4

63, 373, 375, 377, 380; Doc. #141, at 18. Plaintiff cannot demonstrate as a matter of law Rand's statements were false when made.

Plaintiff's fraudulent misrepresentation claim fails because the allegedly fraudulent statements have not been shown to be false when made. Furthermore, to the extent Plaintiff argues these allegedly fraudulent statements induced him to enter into the Consulting Agreement, only statements attributable to Feigin were made prior to entering the agreement. Plaintiff argues Feigin's conduct amounts to fraudulent misrepresentation because Feigin "was well aware that AECOM would or could be unable to perform its duties" under the Consulting Agreement.[2] Doc. #140, at 24. Although Plaintiff points to testimony by Feigin about the difficulty of moving projects forward within the company, the record does not indicate Feigin was "well aware" the Consulting Agreement would be unsuccessful. The Court cannot find falsity in the statements or conduct attributable to Defendant's employees. Accordingly, the Court grants summary judgment in favor of Defendant on Count V.

D. COUNT VII

Plaintiff claims violations of California's Unfair Competition Law ("UCL") in Count VII. In its April 1, 2016 Order, the Court found Plaintiff's claims for fraud and deceit under sections 1572, 1709, and 1710 did not fail to state a claim. Doc. #66, at 9. The Court also determined the same factual allegations underlying Plaintiff's fraudulent misrepresentation claim were the same factual allegations underlying Plaintiff's claim for fraud and deceit under sections 1572, 1709, and 1710. As detailed above, the Court does not find Defendant's employees' statements fraudulent as a matter of law. Furthermore, a UCL claim based on a breach of contract that does not implicate the public in general or individual consumers fails. *Dollar Tree Stores v. Toyama Partners LLC*, 875 F.Supp.2d 1058, 1083 (N.D. Cal. 2012); *see also Linear Tech. Corp. v.*

---

[2] In its opposition, Plaintiff points to several allegedly fraudulent statements by Defendant employees Rand, Rudd, and Kessack to support its fraudulent misrepresentation claim. As explained in the April 1, 2016 Order, statements outside paragraphs 8-11 and 13-14 of Plaintiff's Complaint will not be considered in support of Plaintiff's fraudulent misrepresentation claim. Doc. #66, at 4 & n.1. The Court, therefore, does not address the statements raised in Plaintiff's opposition brief.

5

*Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (Cal. Ct. App. 2007) (holding a corporate plaintiff "may not rely on the UCL" in a contract action where neither the general public or individual consumers are implicated). Neither the public in general or individual consumers are implicated in Plaintiff's private action. Accordingly, the Court grants summary judgment in Defendant's favor on Count VII.

## IV. CONCLUSION

For the above reasons, the Court denies Plaintiff's motion for partial summary judgment (Doc. #125). Further, the Court denies Defendant's motion for summary judgment (Doc. #122) as to Count I. The Court grants Defendant's motion as to Counts II, III, V, and VII.


IT IS SO ORDERED.

                                                                /s/ Ortrie D. Smith
                                                                ORTRIE D. SMITH, SENIOR JUDGE
DATE: November 22, 2016                     UNITED STATES DISTRICT COURT